# EXHIBIT 10 –

## Calvano Declaration of Warrant/Summons

HENDERSON POLICE DEPARTMENT
# DECLARATION OF WARRANT/SUMMONS
### (N.R.S. 171.106)
### (N.R.S. 53 amended 7/13/1993)

∩ ∩ ⁻ 0 3 8 2 9

DEA Case Number: __R5-20-0026__

**STATE OF NEVADA**    )        CANDITO, Christopher Neal
                      ) **ss:**  DOB:
**COUNTY OF CLARK**    )

Detective N. Calvano (hereafter referred to as the affiant), being first duly sworn, deposes and says the following:  That he is a Detective with the Henderson Police Department, being so employed for a period of fifteen (15)  years, working in conjunction with the Drug Enforcement Administration's Tactical Diversion Squad, in which an ongoing investigation of revealed that Defendant, Christopher CANDITO was committing the crimes of; Murder: **(NRS 200.010 (2))**; Conspiracy to Violate Uniformed Controlled Substances Act: **(NRS 453.401 (1A))**; Possession of a Controlled Substance: **(NRS 453.336 (1A))**; Burglary: **(NRS 205.060 (1b & 2b)**; Child Endangerment: **(NRS 200.508 (1A) (2))** THAT DECLARANT DEVELOPED THE FOLLOWING FACTS IN THE COURSE OF THE INVESTIGATION OF SAID CRIME, TO WIT:

In February of 2020, the Drug Enforcement Administration (DEA), Las Vegas District Office (LVDO) Tactical Diversion Squad (TDS) Special Agent (SA) David Behar received information from the Henderson Police Department about the overdose death of Tiffany Slatsky. The crimes surrounding the overdose death involved murder, conspiring to exchange controlled substances (one of which ultimately led to the overdose death of Slatsky), possession of controlled substances, burglary and child endangerment. The investigation uncovered that a City of North Las Vegas firefighter named Christopher CANDITO worked, socialized, possessed and conspired with fellow firefighter Andrew Clapper to conduct narcotics trafficking activities that ultimately led to the overdose death of his wife Tiffany Slatsky based upon Kadian 60mg

LVMPD 314 (Rev. 8/00) WORD 2010

CNLV010232

morphine capsules that were obtained by CANDITO from Clapper. The details surrounding

his activities are described as follows.

## CASE BACKGROUND

On February 21, 2020, Christopher CANDITO, and his wife Tiffany Slatsky attended a

tracksuit themed birthday party, hereafter referred to as the party, hosted by a fellow firefighter

and co-worker at the Golden Nugget Hotel and Casino in Las Vegas, Nevada. Also in

attendance at the event was North Las Vegas firefighter Andrew Clapper. Prior to the party

numerous text messages, and Venmo transactions between CANDITO and Clapper were

exchanged involving the distribution of various controlled substances (specifically pink colored

Kadian 60mg morphine capsules), the synthetic anabolic steroid Trenbolone enanthate and the

procurement, distribution and possession of numerous controlled substances, namely MDMA,

cocaine, psilocybin (mushrooms, shrooms), ketamine (K), oxycodone (oxy's or greens), T

renbolone, Xanax (zanny's or bars) and morphine (pinks) that were being obtained with the

explicit intent of being distributed and made available to individuals attending the party.

## TEXT MESSAGE & VENMO SUMMARY

Between August 30th and September 5th 2019, a series of cellular telephone text

messages and Venmo transaction payments were sent between Christopher CANDITO and

Andrew Clapper. The messages and payment records involved the exchange and distribution

of various narcotics including Kadian 60mg morphine capsules, oxycodone, oxycontin,

the anabolic steroid Trenbelone enanthate and the corresponding payment exchange by

CANDITO for the narcotics. It should be noted that the payment information was further

corroborated by investigators via Venmo transaction records that were obtained through an

administrative subpoena. During the conversations between CANDITO and Clapper,

the actual words "morphine 60mg pills", "morphine" and "Kadian" were used to describe the

narcotics CANDITO purchased. In addition, the text message exchanges included numerous

photos of the narcotics including pink colored Kadian morphine capsules. Listed below is a

**CONTINUATION**

20-03829

DEA Case Number #: _____ **R5-20-0026**

summary of a text message conversation between CANDITO and Clapper that summarizes the total number of pills/capsules CANDITO obtained, purchase price, and corroborating information by CANDITO confirming he received the narcotics.

CANDITO - Yeah man, we'll for sure pick up those pills if it's cool

Clapper – Hey what do you say to 45- Oxycodone 10 mg (fast release)

18 – OxyContin 10mg (slow release)

6- OxyContin 15 mg (slow release)

20 – OxyContin 20mg (slow release)

Total 89 pills!!!

Everything for 6 bottles of Trenbolone?

Clapper – Ok, I'm going to throw in 31 of the morphine – 60mg pills. That way it's an even 120 pills. $5 a pop comes to $600. That's a hell of a deal!

Don't forget 6 bottles of Tren (eventually)!!! $100 a bottle of Tren = $600. You good with that dude?!!!

They say Kadian. But you can google it. It's morphine, lol.

CANDITO – Yeah, that's perfect. My guy takes a little bit but I promise You'll get it You're the fucking man!

Clapper – I'll leave it under a rock outside my door. Text me when you grab it so I know its all good!

It's outside for ya!!!

CANDITO – What's your gate code?

Clapper – Try 06321

CANDITO - Got it! Thanks brotha

Based on training and experience, your Affiant believes that the above referenced text messages between CANDITO and Clapper involved possession with the intent to sell and conspiracy to distribute large quantities of oxycodone, oxycontin, Trenbolone and morphine, which are specifically referenced by name in conjunction with the quantities and payment amounts. Specific reference is made to the fact that a total of 89 various pharmaceutical pills

were being provided to CANDITO by Clapper in exchange for Trenbolone, which is a Schedule III anabolic steroid. With regards to the morphine, further clarification was provided by Clapper that explicitly listed the brand of morphine he was providing to CANDITO, which was Kadian and the dosage unit amount which he listed as 60mg. To further corroborate the narcotics transaction, Clapper also attached several colored photographs within the conversation which contained the exact number of pharmaceutical pills that he was providing, along with his residential condominium number "222" and a hiding location (a large rock) for the narcotics, which he said he concealed outside the door of his residence under a rock. Your Affiant knows that it is common for individuals involved in conducting narcotics transactions to discuss amounts, prices and distribution methods using text messages and often times traffickers hide narcotics in various locations as Clapper did with CANDITO, in order to avoid detection and law enforcement scrutiny. Each of these photographs are affixed to this document for reference as (Attachment A).

## EVENTS FOLLOWING THE TRACKSUIT PARTY

During the morning of February 22, 2020, the party began to wind down and at approximately 6:00 A.M. Kayla Szabo, a close friend of Slatsky's, arrived at the Golden Nugget Hotel and Casino to provide a ride to CANDITO and Slatsky back to their residence, located at 831 Coronado Center Drive #25010, Henderson, Nevada. Upon arrival at the residence, CANDITO and Slatsky continued to drink alcohol and they remained under the influence of various controlled substances throughout the day, along with Szabo. Slatsky's four year old juvenile son was also present in the residence during that same time period. According to recorded body camera statements, CANDITO stated that Slatsky allegedly consumed three to four morphine tablets between 1700 and 1800 hours that day. She then began to slur her words and act strangely around 2200 hours. As a result, CANDITO admitted to placing Slatsky into his vehicle and driving her to North Las Vegas Fire Station 51, located at 2626 E. Carey Avenue, North Las Vegas, Nevada, which was approximately twenty three miles away. Once at the station, CANDITO, who was off shift as a City of North Las Vegas employee and who was acting outside of his official capacity as a State of Nevada certified firefighter/paramedic,

entered into the location utilizing his department issued key card at approximately 2312 hours. CANDITO entered into the structure with the intent to obtain and permanently deprive the City of North Las Vegas and the North Las Vegas Fire Department of Narcan and other medical supplies, that he then administered to Slatsky while attempting to conceal her physical condition from licensed and on duty medical personnel. CANDITO then stated that Slatsky appeared to be "fine" to him and therefore he proceeded to drive her back to their residence where they both went to sleep around midnight. It should be noted that numerous calls between CANDITO and Szabo took place between 2308 hours and 2334 hours that evening.

On February 23, 2020, Henderson Police Communications received a 911 call from Kayla Szabo who advised that her friend Tiffany Slatsky was unconscious and not breathing. Henderson Fire Department Rescue (HFDR) was dispatched and responded to the scene, which was located 831 Coronado Center Drive #25010, Henderson, Nevada. Upon arrival at the scene, Henderson Fire Department Emergency Medical Services (HFD EMS) encountered Christopher CANDITO carrying Slatsky's body outside, subsequently placing her on the curb before beginning chest compressions. Because Slatsky had very little clothing on, HFD EMS personnel brought her back inside of the residence for more privacy.

HFD EMS records indicate that CANDITO stated that he was a North Las Vegas Firefighter/Paramedic and that the previous evening Slatsky had taken four morphine pills around 2200 hours that were not prescribed to her because she was having chest pain. CANDITO further stated that after Slatsky took the morphine and began complaining, he drove her to his fire station and gave her Narcan before returning back to their residence in Henderson between 2200 and 0000 hours the following morning. That morning CANDITO claimed he awoke to find Slatsky with agonal respirations and gave her a sternal rub which she did not respond to.

Once at the scene, HPD officers' also made contact with CANDITO, and were told by

HENDERSON POLICE DEPARTMENT
## CONTINUATION

20-03829

DEA Case Number #: ____R5-20-0026____

him that Slatsky had ingested morphine the previous day and that he had later administered Narcan to her when he felt she was suffering from an overdose. CANDITO further admitted that she did not have a prescription for the morphine which she ingested. Slatsky was subsequently transported to St. Rose Hospital by HFDR and pronounced deceased at 0953 hours.

HPD Detective Nathan Calvano along with a HPD Crime Scene Analyst, responded to the scene and were briefed on the circumstances surrounding the event. Detective Calvano made contact with CANDITIO and asked for consent to search his residence as it related to the current incident. CANDITO denied consent resulting in a State of Nevada electronic search warrant being authored. The search warrant was approved by the Honorable Judge David Gibson of the Henderson Justice Court for the residence, CANDITO's 2018 Toyota Tacoma and Szabo's 2006 Ford Mustang.

Upon approval of the search warrant, a search of the residence resulted in the recovery of evidentiary items further described below.

Upon entry into the location numerous items of drug evidence were recovered throughout the property. These items included but were not limited to; medical intervention paraphernalia, a gift card with an unknown white powdery substance on it, which was located next to one small blue bag containing an unknown white powdery substance and a zip lock bag containing twenty three pink capsules marked 'Kadian 60 mg'. The items were located on the east counter, near the southeast corner. A sink was in the center of the east counter and six clear capsules containing an off white powder and three separated, empty clear capsules containing an off white residue were on the east counter, south of the sink. North of the sink, also on the east counter, was one empty vial of 'Ondansetron Injection, USP 4mg/2mL' (Lot HB3B8043). North of the vial was a brown basket containing numerous pill bottles and syringes. five vials of 'Trenbolone Enanthate 200 mg/mL' and one vial of 'Sustanon 250' were in the

HENDERSON POLICE DEPARTMENT
## CONTINUATION

20-03829

DEA Case Number #:      **R5-20-0026**

basket near the easternmost upper cabinet on the north wall. Also, in this cabinet was another small blue bag containing an unknown white powdery substance, a prescription bottle with no label containing a mixture of seven different pills and a 'Professional Digital Mini Scale' with an unknown residue. Alcohol, wine and mixer bottles were strewn throughout the kitchen along with numerous prescription bottles in multiple names. At the end of the east counter was a stainless steel and black garbage can. The black garbage can contained garbage along with a used IV picc line, a loosely rolled up $1 bill, prescription information forms and a 'City of North Las Vegas Personal Information Change Form'. A bedroom was in the northeast corner of the second level and a bed was against the north wall with a nightstand to the west. One black 'iPhone' with a gray 'Otterbox' case was on the bed and a black pouch containing thirty one clear capsules holding an off white powder was also in the bedroom. Digital images were captured to show identification and overall condition of the above described scene, the search warrant and the search warrant return. The plantlike substance, clear capsule, orange pill and medical paraphernalia from V1, pink capsules, clear capsules, prescription bottle with mixed pills, small blue bags containing the unknown white powdery substance and the seven vials listed above from the kitchen, the clear capsules from the northeast bedroom and both 'iPhones' were collected and impounded as evidence.

A search of CANDITO's Toyota Tacoma resulted in the seizure of two bottles of a plantlike material believed to be psilocybin mushrooms, a small blue bag containing one orange pill marked with a "Tesla" symbol and "CP" and one clear capsule containing an off white powder. Also inside the vehicle were numerous items of medical paraphernalia on the front passenger side floorboard to include an IV catheter, an empty box and syringe of Naloxone Hydrochloride 2mg (RL005L8, 11-20) and an unopened box of Naloxone Hydrochloride 2mg (RL092H8, 7-20).

HENDERSON POLICE DEPARTMENT
## CONTINUATION

DEA Case Number #:     **R5-20-0026**

On the same date photographs of the aforementioned items were taken and are affixed to this document for reference as Attachment D.

On March 2, 2020 at the request of Detective Calvano, evidence packages 1678-001, 1678-003, 1678-007, 1678-008 and 1678-009 were removed from the evidence vault and the narcotics were separated from their original bags/containers. The narcotics were subsequently booked separate from their original bags/containers for additional processing.

The results of the aforementioned narcotics that were recovered during the execution of the search warrant were subsequently submitted to the HPD Criminalistics Bureau Forensic Laboratory for examination. On March 18, 2020, the analytical results of the narcotics that were recovered were provided to investigators and are affixed to this document for reference as Attachment E.

During the incident HPD Detective Calvano approached CANDITO and asked to conduct an interview with him, but he declined and advised that he wished to speak with an attorney prior to giving any statements. Szabo agreed to talk with HPD Detective Calvano and stated that Slatsky had taken morphine the previous night but was unsure how much she had ingested. Slatsky's four year old son was also on scene and later released to Slatsky's parents. It should be noted that HPD Detective Calvano advised Child Protective Services of the situation under (Reference Number: 1928717) and the placement of the four year old juvenile.

On the same date Clark County Coroner Investigator Tiffany Brown met with CANDITO and received the following statement:

He and the decedent went to a party at the Golden Nugget Hotel and Casino on the night of February 21, 2020. He stated that they left the decedent's three year old son with his ex-wife to babysit while they were out. When they went to the party the decedent seemed to be fine with no complaints. He stated while they were at the party they were drinking all night and the decedent did two lines of cocaine and two ecstasy pills while at the party. He

stated that he did not want to give any more information about the party as he did not want to get anyone else in trouble. He stated that they stayed at the party all night long until the decedent's friend, Kayla, picked them up at approximately 0600 hours. She took them home to their apartment and Kayla stayed there with them. Once they got home they continued to drink and hang out. Kayla wanted vodka to drink so Christopher reportedly went to the grocery store to get some. The three of them then took a nap on the living room floor. They woke up around 1500 hours when his ex-wife brought the decedent's son home. At that time the decedent complained of chest pain which CANDITO said was acid reflux. He advised her to go take morphine as that is what she normally did when she would have chest pain/acid reflux. Not long after the decedent took morphine, he stated she started slurring her words and was not acting normal like she was overdosing. He thought that if she ate something she would start to feel better so he went back to the grocery store to buy snacks. When he returned to the apartment, he tried to get the decedent to eat some chips but that did not help. She continued to appear that she was starting to overdose, as she seemed out of it and was slurring her words. CANDITO then drove the decedent to North Las Vegas Fire Station 51 to get Narcan. He stated that he chose to drive to the fire station rather than go to a hospital that was closer or call 911, because the hospitals would not have taken the decedent as she was still breathing, still had a pulse and was aroused when he would rub her leg. He stated he did not think that the decedent was actively overdosing and he wanted to get the Narcan so he would not have to worry about her overdosing throughout the night. When they arrived at Fire Station 51, he went into the building and left the decedent in the front passenger seat of his truck. He also grabbed supplies to start an IV, Narcan and Zofran. He stated that he grabbed the Zofran because he knows that when you administer Narcan, it can make the victim nauseas. He stated that he started the IV in Slatsky's right antecubital fossa. He gave her two milligrams of Narcan and she appeared to be normal after that. He did not have to give her Zofran, but when they

20-03829

arrived back to their apartment at approximately 2300 hours, he stated that Kayla was not feeling well so he gave her Zofran. After she took the Zofran, they were all feeling better so they started drinking again. He did not know if the decedent did any more drugs at that time. They all went to sleep in the living room of the apartment at approximately 0200 hours on February 23, 2020. He awoke at approximately 0830 hours and found the decedent unresponsive. He yelled for Kayla to call 911 as he started cardiopulmonary resuscitation (CPR). Once he heard the sirens he picked the decedent up and carried her outside to the curb, as he said he knows from being a paramedic, that in this situation they just want to scoop her up and go. Once the paramedics arrived they took the decedent back into the apartment where they worked on her before transporting her to the hospital.

Information obtained by investigators from Nevada Department of Health and Human Services Division of Child and Family Services revealed, that an allegation of physical risk to Slatsky's juvenile son regarding CANDITO was substantiated, as collaterals indicated that Tiffany was complaining of back and chest pains after spending the evening having a couple drinks with CANDITO and Szabo. Additionally, findings also revealed that CANDITO gave Slatsky morphine which they had in their home. After Slatsky took the morphine she was described by Szabo to be acting weird and slurring her words. As a result, CANDITO then took Slatsky to his fire station while Szabo stayed home with Slatsky's three year old son. At Fire Station 51, CANDITO gave Slatsky Narcan. They returned home about an hour and a half later and Slatsky was described to be fine, so they went to sleep. It wasn't until the following morning that Slatsky was found unresponsive and 911 was contacted.

The inside of their residence at the time of death was described as having uncapped hypodermic needles, numerous loose pills and prescription bottles in the names of unknown individuals scattered throughout the residence. Dog feces was on the carpet and dirty diapers

HENDERSON POLICE DEPARTMENT
## CONTINUATION

DEA Case Number #: **R5-20-0026**

20-03829

were piled up in bags around the home. (Reference can be made to Attachment A attached herein for photos of the interior of the residence). Slatsky's mother and father were also both interviewed and stated that CANDITO told them that Slatsky was complaining of chest pains and he therefore gave her morphine. When Slatsky began to have a reaction he took her to his fire station to administer Narcan before returning home, going to sleep and finding her unresponsive when he awoke in the morning.

## NORTH LAS VEGAS POLICE DEPARTMENT BURGLARY REPORT

On February 24, 2020, North Las Vegas Police Department (NLVPD) officer Eduardo Castaneda spoke with North Las Vegas Fire Department (NLVFD) Fire Chief J. Calhoun regarding firefighter Christopher CANDITO. Chief Calhoun stated that on February 22, 2020, CANDITO entered Fire Station 51 located at 2626 E. Carey Avenue, North Las Vegas, with his department issued proxy card. Once inside the station, CANDITO illegally took IV tubing and Narcan from the supply room of the station without authorization and that at least forty five dollars worth of supplies had been taken. It should be noted that a search of CANDITO's Toyota Tacoma truck during a search warrant of his vehicle the following day, resulted in the seizure of numerous items of medical paraphernalia on the front passenger side floorboard of his vehicle to include an IV catheter, an empty box and syringe of Naloxone Hydrochloride 2mg (RL005L8, 11-20) and an unopened box of Naloxone Hydrochloride 2mg (RL092H8, 7-20).

## SUSPECT INTERVIEWS

On November 13, 2020, DEA Special Agent's (SA's) David Behar and Donald Snyder conducted an interview of North Las Vegas firefighters Andrew Clapper and Nicholas Robison, at the North Las Vegas Fire Headquarters located at 4040

Losee Road, North Las Vegas, Nevada. During the interviews, SA Behar advised each of them that they were free to leave at any time and were not required to speak to law enforcement. Both were also advised that they were persons of interest in an ongoing overdose investigation involving Christopher CANDITO and his deceased wife Tiffany Slatsky. Neither individual chose to make any statements to law enforcement and both stated they wished to retain attorneys.

On December 1, 2020, SA's David Behar and Donald Snyder spoke with North Las Vegas Fire Department (NLVFD) Captain Joe Garganese telephonically, regarding a statement he made to NLVFD Arson Investigator Jeffrey Lomprey. During the conversation Garganese stated that he had recently been approached by NLVFD firefighter Andrew Clapper. During the encounter, Garganese stated Clapper began speaking about being approached by the DEA several weeks earlier about an ongoing investigation he had been questioned about. According to Garganese, Clapper told him, "Hundreds of pills passed through his hands, I'm scared, I'm going to be terminated and I'm going to jail." Garganese further stated that CLAPPER told him, "They asked me a bunch of questions and I lawyered up." When asked if any additional firefighters had approached him about the same matter Garganese stated that Captain Nicholas Robison had told him, "I'm not scared and I didn't do anything wrong."

On December 2, 2020, SA's Dave Behar and SA Donald Snyder conducted an interview of Ashley Grana (the former girlfriend of Christopher CANDITO). The interview took place after Grana made contact with SA Behar expressing her willingness to fully cooperate with their ongoing investigation.

At the beginning of the interview, SA Behar and SA Snyder advised Grana that she was not a person of interest regarding the overdose death of Tiffany Slatsky and that she was free to leave or not answer questions at any time if she wished.

Grana explained that on December 1, 2020, the night before the date of the interview, Grana asked CANDITO to leave the apartment after she had been contacted by law enforcement regarding a potential interview. Grana explained that she currently felt differently regarding their relationship after learning further details about CANDITO from her family.

Grana recalled how she and CANDITO met in October of 2020 through the dating app Bumble. She explained that they had been dating for over two months and had been living together until she had been asked for an interview and additional information was made known to her by her family. Grana stated that the relationship between her and CANDITO had progressed very quickly and that "things were getting serious." Grana stated that early on in the relationship CANDITO disclosed some information regarding Slatsky's death. Grana admitted to feeling uncomfortable about this but did not see this as anything to worry about. Grana further explained that CANDITO had been introduced to Grana's family, some of whom had some knowledge of CANDITO's prior behavior as they were firefighters themselves. Grana stated that although no one in her family knew all the details surrounding Slatsky's death, they had heard "rumors."

Grana explained that during their relationship, she and CANDITO had discussed the details of Slatsky's death several times. During these conversations, CANDITO provided details regarding his overall drug use as well as the circumstances of Slatsky's death. According to Grana, CANDITO explained that Slatsky had been experiencing chest pain and swallowed an "entire bottle of Pepto" but still felt ill so "she took morphine." CANDITO then explained that Tiffany had labored breathing, pin-point pupils, and she was a "possible overdose." CANDITO went on to state that he and Slatsky went to the fire house and that CANDITO administered Narcan to her. CANDITO and Slatsky then returned home and went to bed, however when CANDITO awoke the next morning, Slatsky was non-

responsive. At that time CANDITO administered CPR and called 911. When Emergency Medical Services (EMS) arrived, CANDITO questioned EMS about Slatsky's systolic pulse to which EMS responded "its not looking good". CANDITO remarked to Grana that he knew she "was gone." Grana felt uneasy with the explanation and expressed it as a "red flag." Grana stated, "As time went on, I questioned more - especially about the drugs." CANDITO went on to state that he did not call 911 the night Slatsky overdosed "because of the drugs in the house."

Grana also stated that during conversations specifically pertaining to Slatsky's death, CANDITO admitted to taking drugs the night Slatsky died. CANDITO stated that drug use was "the premise of the party," and that there was "a lot because of the party." When Grana questioned him about the source of the morphine that Slatsky consumed, CANDITO responded that the morphine was from "Tiffany's mother", but went on later to recant that story.

Grana stated that CANDITO admitted to "do drugs with fireman" and that "he and Tiffany would do ecstasy, frequently." Furthermore, on multiple occasions, CANDITO would admit to using mushrooms, cocaine, morphine, and ecstasy, specifically with Slatsky. Grana did not recall meeting any firefighters, however, she does recall that CANDITO mentioned "Micah" in passing. According to Grana, CANDITO would often talk about his firefighter past and expressed guilt regarding the night Slatsky died. In a recent conversation with Grana, CANDITO had commented that "it would be easier to die." Grana mentioned that she was concerned for CANDITO's mental health. CANDITO did attend a rehabilitation facility in Maryland under advisement of his lawyer and that CANDITO "enjoyed being there because of therapy."

When Grana was questioned by SA Behar and SA Snyder about the source of drugs

pertaining to the night Slatsky died, Grana replied, "Am I safe if I tell you this?," expressing concern about her personal safety and possible retaliation from "drug dealers." Grana did not disclose who these drug dealers were, only that she believed them to be real. SA Behar explained that her safety was of primary concern and that resources were available for her protection if necessary.

When Grana was questioned by SA Behar and SA Snyder about CANDITO's current location, Grana stated that CANDITO was residing with his cousin, "Gavin," at 5309 North Campbell, Las Vegas, NV." Grana stated that there were also three minors and two adults residing at that address. Grana also stated that CANDITO was very close with his aunt, Alona, and that she may willing to speak with us.

Grana stated that she recently questioned CANDITO about Slatsky possibly being a stripper or an escort, after learning that information from her father. During that conversation, CANDITO became evasive, admitted that Slatsky would meet an "older guy" and he would allow him to "buy her dinner and give her $2,100 and Louis Vuitton bags." Grana then asked CANDITO if he forced her into becoming a stripper or an escort to which he replied, "Got used to the money" and "If that's pimping, so-be-it." Grana stated this topic was the source of "many fights."

Grana stated that CANDITO admitted to steroid use but that now he is currently using "testosterone with a needle." Grana stated she was uncomfortable with his use, especially in her apartment. When Grana asked CANDITO about his testosterone, he stated, "he needed it." When Grana would see the testosterone paraphernalia (needles), she would place them in a plastic bag and place it out of view.

Lastly, Grana stated that she asked CANDITO "have you ever made a profit from drugs?" to which CANDITO replied, "No, but I have traded."

## CLARK COUNTY CORONER'S AUTOPSY FINDINGS

On March 16, 2020, a finalized version of the Clark County Coroner's Office autopsy and toxicology report was provided to investigators. Contained within the report was a toxicity analysis of Slatsky and a cause of death which listed multiple drug intoxication (MDMA, morphine, phentermine, etizolam, cocaine and zolpidem).

## MEDICAL EXPERT FINDINGS

During the course of the investigation, investigators retained certified medical expert Michael Levine MD, FACEP, FACMT to independently review the case involving Tiffany Slatsky, and opine on the **proximate cause of death** as it relates to the but-for standard to meet in drug-related deaths. Dr. Levine's findings stated the following, as authored by him in summary; Slatsky had several stimulants found in her blood (phentermine, MDA, and MDMA). In addition, benzoylecgonine, a metabolite of cocaine, was observed in the blood and urine (although no cocaine was found in the blood), suggesting metabolism of cocaine. Stimulant drugs would be expected to have opposite effects on the mental status than opiates or sedatives. The clinical toxicity of these drugs is characterized by central nervous system excitation (agitation, hallucinations, combativeness, seizure, etc.), along with increased heart rate and blood pressure. Methylenedioxymethamphetamine (MDMA) is metabolized via N-demethylation to methylenedioxyamphetamine (MDA). The MDA may have been consumed as MDA or a metabolite of MDMA. The levels of phentermine that are seen in deaths due to phentermine toxicity are 4000 ng/mL (range 1500-7600 ng/mL). The average levels of MDA and MDMA that are observed following MDMA-related deaths are 100 and 3100 ng/mL,

HENDERSON POLICE DEPARTMENT

## CONTINUATION

DEA Case Number #: **R5-20-0026**

respectively. benzoylecgonine, a metabolite of cocaine, was observed in the blood and urine.

Thus, Ms. Slatsky had a clinical scenario that is consistent with opiate overdose, in which she had relatively quick onset of central nervous system and respiratory depression, that was transiently reversed with naloxone, but ultimately recurred likely after she fell asleep, ultimately culminating in her death. She received no opiates during resuscitation. The reported level is consistent with previously reported cases of Morphine toxicity. While I am aware that the medical examiner listed the cause of death as multiple drug intoxication (MDMA, morphine, phentermine, etizolam, cocaine, and zolpidem), it is my opinion, to a reasonable degree of medical certainty, that the **proximate cause** cause of death was acute morphine toxicity. The other drugs were not the cause of death.

## CONCLUSION

Pursuant to the above listed facts, your Affiant believes that probable cause exists for the issuance of a Warrant of Arrest for CANDITO, for the attached listed crimes. In addition to an arrest warrant, your Affiant respectfully requests the consideration of a fully extraditable warrant, due to the fact that CANDITO has the means, ability and knowledge to travel outside of the jurisdiction of the court in the future to avoid prosecution, as he is aware of this criminal investigation and has ties to other various states.

Wherefore, Declarant prays that a Warrant of Arrest be issued for suspect: **Christopher CANDITO, on the charge(s) of Murder: (NRS 200.010 (2)); Conspiracy to Violate Uniformed Controlled Substances Act: (NRS 453.401 (1A)); Possession of a Controlled Substance: (NRS 453.336 (1A)); Burglary: (NRS 205.060 (1b & 2b); Child Endangerment: (NRS 200.508 (1A (2)) Conspiracy to Violate Uniformed Controlled Substances Act. I declare under**

HENDERSON POLICE DEPARTMENT

## CONTINUATION

20-03829

DEA Case Number #: **R5-20-0026**

penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

Executed on this 30th day of June, 2021.

DECLARANT _____ #1339

WITNESS: _____ DATE: 06/30/2021