# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MARIAH MASS, *et al.*,

           Plaintiffs,

    vs.

CHRISTOPHER CANDITO, *et al.*,

           Defendants.

Case No.: 2:22-cv-00568-GMN-BNW

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is Defendant City of North Las Vegas's ("CNLV") Motion for Summary Judgment, (ECF No. 111). Plaintiffs Maria Maas and Martin Slatsky filed a Response, (ECF No. 131), to which CNLV filed a Reply, (ECF No. 138). Also pending before the Court is CNLV's Motion for Leave to File Excess Pages, (ECF No. 114), to which Plaintiffs did not respond.[1] Further pending before the Court is Plaintiffs' Motion to Seal, (ECF No. 134), to which Defendants did not file a response.[2]

---

[1] Under Local Rule 7-2(d), "[t]he failure of an opposing party to file points and authorities in response to any motion, except a motion under Fed. R. Civ. P. 56 or a motion for attorney's fees, constitutes a consent to the granting of the motion." LR 7-2(d). Further, the Court finds that CNLV has established good cause to file its 36-page Motion for Summary Judgment. Accordingly, the Court GRANTS the Motion for Leave to Filed Excess Pages.

[2] The public has a presumptive right to inspect and copy judicial records and documents. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Consequently, a party seeking to seal a judicial record under Federal Rule of Civil Procedure 26(c) "bears the burden of overcoming this strong presumption." *Id.* Though Plaintiffs filed the instant Motion to Seal and point to the Protective Orders that have been entered in this case, (ECF Nos. 47, 76), they fail to explain why good cause exists to seal each exhibit. The mere fact that a party designated a document as confidential during discovery does not satisfy Plaintiffs' burden. Instead, Plaintiffs much show that, "for each particular document" they seek to seal, "prejudice or harm will result if no protective order is granted." *Folz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003). Accordingly, the Court DENIES the Motion to Seal without prejudice. The Court grants Plaintiffs leave to refile within 14 days of the entry of this Order and will keep the subject exhibits under seal until it rules on the renewed motion.

Because the Court finds that CNLV has failed to raise a genuine issue of fact on its claims against CNLV, the Court **GRANTS** the City of North Las Vegas' Motion for Summary Judgment.

## I.    BACKGROUND

This action arises out of the tragic death of Tiffany Slatsky on February 23, 2020. (*See generally* First Am. Compl. ("FAC"), ECF No. 86).  Defendant Christopher Candito was married to Tiffany Slatsky and was a certified paramedic for Defendant CNLV. (Candito Dep. 31:3–6, Ex. 1 to Resp. Mot. Summ. J ("MSJ"), ECF No. 131-2).  On February 21, 2020, Candito and Slatsky attended a party at the Golden Nugget Hotel and Casino in Downtown Las Vegas. (Calvano Decl. at 2, Ex. 10 to Resp. MSJ, ECF No. 131-11).  Around five or six in the morning on February 22, 2020, Slatsky's friend Kayla Szabo drove her and Candito back to their home. (Stocker Depo. 168:15–23, Ex. 5 to Resp. MSJ, ECF No. 131-6); (Candito Depo. 127:17–24, Ex. 1 to Resp. MSJ).  When they arrived back to the house, Candito, Slatsky, and Szabo were high on MDMA when they continued to drink alcohol. (Candito Depo. 127:2–13, Ex. 1 to Resp. MSJ).  At some point on February 22, Candito went to the grocery store to purchase food for Slatsky who was complaining of stomach pain due to an ulcer. (*Id.* 128:22–129:3).  Later, Slatsky took an unknown number of morphine pills that Candito had purchased to treat the pain caused by her ulcer. (*Id.* 130:3–16).  After she took the unspecified number of pills, Candito observed Slatsky showing signs of an overdose, including slurred speech and loss of motor function. (*Id.* 130:20–131:4).  Candito then decided to take Slatsky to the CNLV Fire Station 51. (*Id.* 131:15–17).

When he arrived at the fire station, Candito was required to enter a code to open the exterior gate. (*Id.* 132:7–25).  That code was not available to the public. (*Id.* 133:1–3).  He then used his fire department-issued access card to enter the station. (*Id.* 133:11–134:1).  Once inside the station, Candito accessed the EMS bags kept in each fire department vehicle and took

Narcan and IV equipment. (*Id.* 134:5–135:8). He came and left the station undetected. (*Id.* 135:1–6). He then returned to his truck and drove to a nearby parking lot where he treated Slatsky with Narcan. (*Id.* 137:18–128:1). Candito drove them back to their home, where she was acting "completely normal" following the Narcan administration. (*Id.* 144:8–17). They went to sleep, and when Candito woke up the next day, he noticed that Slatsky was unresponsive. (*Id.* 145:1–5). Candido then told Szabo to call 911 and started CPR on Slatsky. (*Id.* 145:11–12). Once EMS arrived, they took over CPR and began administering medical care. (*Id.* 14610–147:5). EMS took Slatsky to St. Rose Hospital, but she ultimately passed away. (*Id.* 147:21–23); (Clark Cnty. Coroner Report at 3, Ex. 16 to Resp. MSJ, ECF No. 131-17).

In Plaintiffs' Amended Complaint, they bring claims against Candito, CNLV, Nicolas Robison, Andrew Clapper, and Andrew Stocker. (*See generally* FAC). Since the filing of the FAC, the parties have stipulated to dismiss the claims against Nicholas Robinson, (ECF No. 108), Andrew Stocker, (ECF No. 122), and Andrew Clapper, (ECF No. 126). CNLV now moves for summary judgment on all claims against it. (Mot. Summ. J., ECF No. 111).

## II.    **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*,

718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quotation marks and citation omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III.   DISCUSSION

CNLV argues that summary judgment is warranted because it played no part in Tiffany Slatsky's tragic death.  All claims asserted against CNLV are brought under § 1983. (*See generally* FAC).  A local governmental unit may not be held responsible under § 1983 for the acts of its employees under a respondeat superior theory of liability.[3] *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  Instead, a municipality may be liable under § 1983 only "if

---

[3] CNLV argues that it cannot be held vicariously liable because a municipality cannot be held liable under § 1983 on a respondeat superior theory, and because it is not required to indemnify Candito. (MSJ 9:2–10:14). Plaintiffs concede both issues, (Resp. 16:18–21, ECF No. 131), so the Court does not address them.

the government body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978)).  Because Plaintiffs' only claims against CNLV are brought under § 1983, the only question before the Court is whether there is a genuine issue of material fact as to municipal liability.[4]

A litigant may recover from a municipality under § 1983 on one of three theories of municipal liability. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2010). "First, a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Id.* (quoting *Monell*, 436 U.S. at 708 (Powell, J. concurring)).  "Second, under certain circumstances, a local government may be held liable under § 1983 for acts of omission, when such omissions amount to the local government's own official policy." *Id.*  "Third, a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)).

Plaintiffs assert that CNLV is liable due to its policies and procedures, its failure to train, and its ratification of Candito's unconstitutional actions.  The Court considers each theory in turn.

---

[4] CNLV asserts that it is not liable for Plaintiffs' claims of false imprisonment and battery because Candito was not acting within the scope of his employment and thus CNLV is not vicariously liable.  Plaintiffs respond to this argument, but both parties fail to notice that Plaintiffs' Amended Complaint does not contain causes of action for false imprisonment or battery. (*See generally* FAC).  All claims asserted against CNLV in the Amended Complaint are brought under § 1983.  Thus, the Court does not address the issue of vicarious liability as briefed by the parties.

Similarly, the parties dispute whether Candito was acting under the color of state law, but that inquiry is not one of the elements of *Monell* liability and is therefore not relevant to whether CNLV is liable.  Thus, the Court need not resolve that issue either.

**A. Policies and Procedures**

To establish municipal liability under *Monell*, Plaintiffs must prove that (1) they were deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to Plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020).

CNLV presents evidence that it has policies and procedures designed to address standards of conduct and drug use by employees, including North Las Vegas Fire Department ("NLVFD") Policy 1.0.3 (Substance Abuse/Drug Free Workplace), and NLVFD 1.0.0 (General Rules of Conduct), which both mandate the employees maintain a drug free workplace and abide by the law. (NLVFD Policy 1.0.0, Ex. F to MSJ, ECF No. 113-2); (NLVFD Policy 1.0.3, Ex. G to MSJ, ECF No. 113-2). That evidence is sufficient to meet CNLV's initial burden of presenting evidence to negate an essential element of Plaintiffs' claim; specifically, it undermines Plaintiffs' claim that CNLV had a differing policy regarding drug use.

Plaintiffs argue that there was an overarching custom and practice of allowing the CNLV fire department employees to engage in unchecked drug use and misconduct. (Resp. 17:3–7). Even without a formal policy, *Monell* liability may attach to longstanding practice or custom "that has not been formally approved by an appropriate decisionmaker . . . on the theory that the relevant practice is so widespread as to have the force of law." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011). But such a practice must be so "persistent and widespread" that it constitutes a "permanent and well settled" policy. *Monell*, 436 U.S. at 691. In general, "[a] plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233–34 (9th Cir. 1989) (*citing City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion)).

Plaintiffs have not raised a genuine dispute of fact as to whether CNLV had a practice that was so "persistent and widespread" that it would constitute a policy for the purposes of *Monell* liability. They point to NLVFD Chief Calhoun's testimony that CNLV "had no policy requiring its employees to report coworker misconduct, no CNLV employees were penalized for failing to report the misconduct alleged in this case, and no CNLV employees who were at the party were drug tested," without citing where in his testimony he said those things. Plaintiffs also identify Candito's testimony that the group of employees he spent time with were known as the "party group," and that he knew about the drug use of the "older generation of firefighters," again without pointing to the location of that testimony.

Even if Plaintiffs had met their burden by identifying the location of that testimony, it would not change the outcome on this issue. Municipal liability for an "improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Plaintiffs rely on evidence that individual employees had sporadic knowledge of drug possession and use both before and during the party, but they do not identify a single incident other than the incident involving Slaatsky that would support a finding that a custom existed for *Monell* purposes. Because Plaintiffs do not identify other incidents other than the one at issue here, the Court finds that they fail to establish that there is a genuine dispute of material fact as to whether a pervasive custom of not enforcing the no-drug policy existed. *See Trevino*, 99 F.3d at 918.

**B. Failure to Train**

In limited circumstances, a government's failure to train may rise to the level of an official policy, but municipal "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61; *Benavidez v. County of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021). A municipality's failure to train its employees

may create § 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *Connick*, 563 U.S. at 61; *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  To recover for a failure to train, a plaintiff must show: (1) he was deprived of a constitutional right, (2) the municipality had a training policy that "amounts to deliberate indifference to the [constitutional] rights of the persons with whom [its police officers] are likely to come into contact;" and (3) his constitutional injury would have been avoided had the municipality properly trained those officers. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007); *see Benavidez*, 993 F.3d at 1153–54.  The inadequate training must have "actually caused" the deprivation of rights. *Marsh v. County of San Diego*, 680 F.3d 1148, 1159–60 (9th Cir. 2012).  "Deliberate indifference is a stringent standard of fault requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61.  "Mere negligence in training or supervision . . . does not give rise to a *Monell* claim." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference' for purposes of failure to train." *Connick*, 563 U.S. at 62.  However, although "rare," "in a narrow range of circumstances," a pattern of similar violations may not be necessary where violations of constitutional rights are patently obvious or the "highly predictable consequence" of a failure to train. *Id.* at 63.  Finally, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable." *City of Canton*, 489 U.S. at 391.

CNLV asserts that the training records and testimony in evidence demonstrate that CNVL's training policies were not deficient.  The Court finds that CNLV has met its burden of putting on evidence to negate an essential element of Plaintiffs' failure to train theory by

presenting evidence that EMT's are trained on Narcan administration by a training that meets education standards for EMTs. (Campbell Dep. 38:7–41:19, Ex. M to MSJ, ECF No. 113-3). The burden therefore shifts to Plaintiffs to establish that a genuine issue of material fact exists.

Plaintiffs cannot meet that burden. Plaintiffs do not claim that training on how to administer Narcan was never provided; instead, they contend that CNLV failed to provide "refresher" training. (Resp. 20:4–11). They fail to identify a "pattern of similar constitutional violations by untrained employees," *see Connick*, 563 U.S. at 62, and instead assert that the need to provide more frequent training was so obvious that it can amount of a policy of deliberate indifference without a showing of a pattern of violations. (Resp. 19:17–20:3). But Plaintiffs do not provide evidence that could support a finding that the failure to provide continuing education on care following the administration of Narcan does not fall into the "narrow range of circumstances" where a pattern of violations is not necessary to show deliberate indifference. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997).

As the Supreme Court has explained, proof that "'an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct' will not suffice." *Connick*, 563 U.S. at 68. Here, Plaintiffs argue just that: additional, regular training on Narcan administration would have equipped Candito with the knowledge needed to avoid the injury-causing conduct. Unlike *City of Canton v. Harris*, the case in which the Supreme Court left open the possibility that a pattern of violations may not be necessary to prove a failure to train case, this case does not involve the complete lack of training that made constitutional violations "highly predictable." *See Canton*, 489 U.S. 378, 385 (1989).

This is particularly true because Plaintiffs fail to rebut evidence presented by CNLV that EMTs were not expected to monitor individuals receiving Narcan for extended periods of time

because their responsibilities only involve transporting individuals to the hospital for treatment after administering Narcan. (Reply 8:20–24); (Campbell Dep. 49:3–50:22, Ex. M to MSJ, ECF No. 113-3) ("We did see that Candito had multiple narcotic overdoses where he did give Narcan, and every single one of those patients was transported to the hospital."); (Robison Dep. 69:4–6).  Thus, where EMTs are not expected to continue to treat patients after administering Narcan, it is not "plainly obvious" that the failure to provide continuous training on treatment following the administration of Narcan would result in constitutional violations. *See Bryan Cnty.*, 520 U.S. at 398.

Because this is not one of the narrow range of circumstances where a pattern of violation is not necessary to show deliberate indifference, and Plaintiffs provide no evidence of a pattern of violation, the Court finds that Plaintiffs have failed to meet their burden of raising a genuine dispute of material fact on their failure to train theory.

## C. Ratification of Unconstitutional Conduct

Plaintiffs last theory of *Monell* liability is that CNLV ratified Candito's allegedly unconstitutional acts by not enforcing its policies prohibiting drug use.  "[A] local government may be held liable if 'the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802–03 (9th Cir. 2018) (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013)). "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).  "'There must, however, be evidence of a conscious, affirmative choice' on the part of the authorized policymaker." *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled on other grounds by Castro v.*

*Cty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (*en banc*) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992)).

A local government can be held liable "only where 'a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Gillette*, 979 F.2d at 1347 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84 (1986)).  Failing to discipline an employees' misconduct is not enough to show ratification. *Clouthier*, 591 F.3d at 1253.  Importantly, because the policy maker must "have knowledge of the constitutional violation and actually approve of it," the "mere failure to overrule a subordinate's actions, without more, is insufficient" to show ratification. *Sheehan v. City and County of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part, on other grounds, City & Cty. of San Francisco, Calif. V. Sheehan*, 135 S. Ct. 1765 (2015).

Here, Plaintiffs assert that CNLV ratified Candito's conduct by failing to enforce its policies against drug use and creating an environment that allowed for this incident to occur. (Resp. 21:7–10).  CNLV argues that Plaintiffs fail to provide evidence to support a finding that Firehouse 51 was a party house.  It further argues that the evidence instead shows that Candito was thoroughly disciplined by CNLV following the subject incident, which demonstrates the lack of ratification.  Though CNLV's focus on the evidence regarding the party house misses the mark, the Court finds that it has met its burden of negating an essential element of Plaintiffs' ratification theory with the evidence that CNLV terminated Candito following the events of this case.

The burden then shifts to Plaintiffs to raise a genuine dispute of material fact on this issue.  Plaintiffs have failed to do so.  Plaintiffs present no evidence that an official responsible for establishing final policy make a deliberate choice to follow Candito's action here, nor that a policy maker had knowledge of the constitutional violation and actually approved of it. *See*

*Gillette*, 979 F.2d at 1347; *Sheehan*, 743 F.3d at 1231.  Thus, nothing about Plaintiffs' theory regarding the lack of enforcement of the drug policy, nor the evidence they point to, can support a finding that CNLV ratified the unconstitutional action complained of here.  Accordingly, the Court GRANTS CNVL's Motion for Summary Judgment on all claims against it.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that the City of North Las Vegas's Motion for Leave to File Excess Pages, (ECF No. 114), is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Seal, (ECF No. 134), is **DENIED without prejudice.**  Plaintiffs may file another motion to seal within 14 days of the entry of this Order.  Failure to file a renewed motion will result in the unsealing of the documents.  The Clerk of Court is kindly directed to keep the subject exhibits, (ECF No. 133), under seal until the Court rules on the renewed motion.

**IT IS FURTHER ORDERED** that the City of North Las Vegas's Motion for Summary Judgment, (ECF No. 111), is **GRANTED.**

**IT IS FURTHER ORDERED** that the remaining parties, Plaintiffs and Defendant Christopher Candito, will have thirty days from the date of this Order to file a jointly proposed pretrial order pursuant to LR 16-3(b) using the form provided in LR 16-4.

The Clerk of Court is kindly directed to enter judgment for City of North Las Vegas.

**DATED** this __27__ day of March, 2026.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT